IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LILIANA JACQUELINE MONDRAGON MARTINEZ, | No. 3:24-cv-00694-HZ |
| Petitioner, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| v. | |
| OSCAR AURELIO VEGA CONTRERAS, | |
| Respondent. | |

HERNÁNDEZ, District Judge:

    This matter came before the Court on Petitioner's Verified Petition for Return of Child to Habitual Residence, ECF 1. Petitioner Liliana Jacqueline Mondragon Martinez sought the return of her minor child, SVM to Mexico pursuant to the Hague Convention on the Civil Aspects of Child Abduction and the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001-9011 ("ICARA"). Respondent Oscar Aurelio Vega Contreras opposed the Petition.

1 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

On July 24, 2024, through July 26, 2024, the Court conducted a three-day bench trial at which Petitioner and Respondent appeared represented by counsel.[1] At the conclusion of trial the Court granted the Petition for Return of Child and ordered the return of SVM to Mexico.

## FINDINGS OF FACT

1.1   Petitioner currently resides and is employed in Apatzingán, Michoacán, Mexico.

1.2   Respondent currently resides and is employed in Oregon pursuant to the Deferred Action for Childhood Arrivals ("DACA") program.

1.3   Respondent understands that due to the parameters of the DACA program, if he travels to Mexico he will be able to reenter the United States only under very limited circumstances.

1.4   Petitioner and Respondent are the biological parents of one minor child, SVM.

1.5   Petitioner came to the United States in 2015 on a tourist visa.

1.6   SVM was born in Oregon on October 24, 2016.

1.7   Petitioner and SVM resided in Oregon from October 2016 through March 2017.

1.8   In March 2017 Petitioner and SVM went to Mexico.

1.9   In May 2017 Petitioner returned to the United States and was detained by Immigration and Customs Enforcement for overstaying her 2015 tourist visa. SVM travelled to Oregon with Respondent's sister two days after Petitioner was detained.

1.10  Petitioner was detained in the United States from May 2017 to August 2017, at which time she was deported to Mexico and prohibited from reentering the United States for 10 years.

---

[1] Petitioner appeared remotely from Mexico. Respondent appeared remotely July 24 and 25 and in person on July 26, 2024.

1.11  SVM lived with Respondent in Oregon from the time Petitioner was detained in May 2017 through early September 2017.

1.12  In September 2017 SVM returned to Mexico to live with Petitioner.

1.13  SVM resided with Petitioner in Mexico from September 2017 through December 2022.

1.14  Before March 2022, the parties did not have an agreement regarding custody of SVM.

1.15  SVM visited Respondent in Oregon in 2018 for two or three weeks and again from July 2019 to March 2020.

1.16  From September 2017 to December 2022 SVM received his primary medical and dental care, including vaccinations and annual doctor visits, in Mexico.

1.17  SVM attended preschool and kindergarten in Mexico from 2018 through 2022.

1.18  SVM began first grade in Mexico in August 2022 for the 2022-2023 school year.

1.19  SVM participated in karate, taekwondo, soccer, and other extracurricular activities as well as regular play dates with neighbors, friends, and relatives in Mexico.

1.20  SVM has extensive family in Mexico who were part of SVM's daily life through church, birthday parties, family reunions, and similar activities.

1.21  SVM's primary language is Spanish.

1.22  At some point before March 2022 Respondent initiated a complaint with Mexican authorities in which he asserted that Petitioner was not permitting SVM to travel to the United States.

1.23  At 10:30 p.m., on March 31, 2022, several individuals including a judge, a police officer, and a psychologist went to Petitioner's home in Mexico with the intent that SVM would leave with Respondent's father and ultimately be brought to Respondent in the United States.

3 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.24   The judge held a hearing at Petitioner's home at which Respondent appeared remotely.

1.25   After the hearing Petitioner and Respondent negotiated and came to an agreement regarding custody of SVM, including that SVM would remain with Petitioner in Mexico at that time.

1.26   On June 2, 2022, Petitioner and Respondent, each represented by counsel, participated in a hearing before Sandra Patricia Rivera Aguilar, a Mexican judge. At the hearing the parties presented a proposed written custody agreement, the judge read each of the provisions of the proposed written custody agreement to both parties, and each party stated on the record that they agreed to each provision of the custody agreement. The judge then approved and signed the written custody agreement.

1.27   Respondent has not filed or started any legal proceeding in Mexico to modify the June 2022 agreement.

1.28   Although the June 2, 2022, custody agreement provided that SVM would travel to Oregon for summer vacation in 2022, SVM did not have a valid passport at that time and the parties believed that SVM could not travel to the United States until he had a valid passport.

1.29   Petitioner obtained a valid passport for SVM as soon as possible in either late August or early September 2022.

1.30   On November 3, 2022, SVM had surgery at the Mexican Institute of Social Security to treat an abscess near his right ear.

1.31   SVM was given local anesthesia and sedation and the abscess was lanced and drained.

1.32  SVM had a follow up medical appointment on December 16, 2022, at which the doctor did not note any problems. Petitioner scheduled a second follow up appointment for January 20, 2023.

1.33  Under the custody agreement, SVM travelled from Mexico to Oregon on December 19, 2022, to stay with Respondent through January 6, 2023.

1.34  On December 20, 2022, SVM was seen by a doctor in Oregon for a routine physical. The doctor noted no abnormal findings.

1.35  On December 29, 2022, Respondent brought SVM to an emergency room due to swelling and redness of the area near SVM's right ear where the abscess had been treated in November 2022.

1.36  The emergency room doctor squeezed the swollen area and noted purulent drainage with light pressure. A wound culture was taken. Respondent received instructions from the emergency room to follow-up for results of the culture.

1.37  Respondent scheduled a follow-up appointment for SVM on January 6, 2023; informed Petitioner that SVM had a medical appointment; and changed SVM's return flight to Mexico to January 14, 2023.

1.38  On January 6, 2023, SVM was seen for a follow up appointment in Oregon at which the doctor noted his abscess appeared to have resolved and there was no indication that a repeat incision and drainage would be necessary.

1.39  On January 11, 2023, Respondent took SVM to the emergency room with concerns about worsening of the abscess. The abscess area was numbed and lanced and purulence expressed. A culture was obtained and SVM was given antibiotics. A follow up

appointment was scheduled with a pediatric ear, nose, and throat specialist in Oregon and surgery was scheduled for February 8, 2023.

1.40   On February 8, 2023, SVM underwent surgery on the abscess.

1.41   Petitioner did not consent to the surgery in Oregon or to the delay of SVM's return to Mexico.

1.42   Respondent changed SVM's return flight to Mexico at least seven times and at the time of trial, SVM's return flight was scheduled for August 30, 2024.

1.43   Petitioner repeatedly requested that Respondent return SVM to Mexico after January 6, 2023, but Respondent declined.

1.44   Respondent changed SVM's return flights initially due to SVM's medical treatment for the abscess. After the abscess had successfully resolved, however, Respondent continued to extend SVM's time in Oregon because he did not like Petitioner's attitude and was concerned that she would not agree to a change in custody if he returned SVM to Mexico.

1.45   SVM attended school in Oregon from February 2023 through June 2024. Because SVM was a Spanish speaker, he was required to repeat kindergarten in Oregon from February 2023 through June 2023 in a dual language program.

1.46   SVM attended first grade in Oregon from September 2023 through June 2024 in a dual language program.

1.47   Since December 2022 SVM has lived in Oregon with Respondent, Respondent's fiancée, and her two children. Respondent's mother, brother, and sister also live in Oregon.

1.48   On April 23, 2024, Petitioner filed the Petition for Return of SVM with this Court.

**CONCLUSIONS OF LAW**

"The Hague Conference on Private International Law adopted the Hague Convention in 1980 to address the problem of international child abductions during domestic disputes." *Monasky v. Taglieri*, 589 U.S. 68, 71 (2020)(quotation omitted). "The International Child Abduction Remedies Act (ICARA), 102 Stat. 437, as amended, 22 U.S.C. § 9001 *et seq.*, implements [the United States'] obligations under the Convention." *Id.* at 72. "It is the Convention's core premise that 'the interests of children . . . in matters relating to their custody' are best served when custody decisions are made in the child's country of 'habitual residence.'" *Id.* at 71-72 (quoting Convention Preamble, Treaty Doc., at 7; and citing *Abbott v. Abbott*, 560 U.S. 1, 20 (2010)). "To that end, the Convention ordinarily requires the prompt return of a child wrongfully removed or retained away from the country in which [he] habitually resides." *Id.* (citation omitted).

"[T]he party petitioning for the child's return bears the burden of establishing by a preponderance of the evidence that the child was wrongfully removed or retained." *Golan v. Saada*, 596 U.S. 666, 671–72 (citing 22 U.S.C. § 9003(e)(1)). "A child is wrongfully removed whe[n] removal occurs 'in breach of rights of custody attributed to a person . . . under the law of the State in which the child was habitually resident immediately before the removal or retention' and 'at the time of removal or retention those rights were actually exercised . . . or would have been so exercised but for the removal or retention.'" *Harvey v. Means*, No. 2:23-CV-1712, 2023 WL 8360021, at *2 (W.D. Wash. Dec. 1, 2023) (quoting Convention, arts. 1, 3).

> A court applying this provision must therefore answer four questions: (1) When did the removal or retention at issue take place? (2) Immediately prior to the removal or retention, in which state was the child habitually resident? (3) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence?

7 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

> (4) Was the petitioner exercising those rights at the time of the removal or retention?

*Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001), *abrogated on other grounds by Monasky v. Taglieri*, 589 U.S. 68 (2020).

If a petitioner establishes a prima facie case of wrongful removal or retention, the burden shifts to the respondent to establish an exception to return. 22 U.S.C. § 9003(e)(2)(A). "Although the[] exceptions . . . are available, numerous interpretations of the Convention caution that courts must narrowly interpret the exceptions lest they swallow the rule of return." *Asvesta v. Petroutsas*, 580 F.3d 1000, 1004 (9th Cir. 2009). The Convention "does not require a court to refuse return of the child upon the demonstration of one of the article's defenses. Indeed, American courts have emphasized that a federal court retains, and should use when appropriate, the discretion to return a child, despite the existence of a defense, if return would further the aims of the Convention." *Id.* (quotation omitted).

2.1   The parties stipulated that the date of retention is June 19, 2023.

2.2   The Hague Convention does not define "habitual residence." The Supreme Court has stated that a child's "residence in a particular country can be deemed 'habitual' . . . only when [his] residence there is more than transitory." *Monasky*, 589 U.S. at 76. Facts relevant to the question of habitual residence include the child's age, the immigration status of the child and parents, the child's academic activities, social engagements, participation in sports, meaningful connections with people and places, language proficiency, and the location of the child's personal belongings. *Id.* at 78 n.3.

2.3   Based on the above factors, Petitioner established by a preponderance of the evidence that SVM's habitual residence is in Mexico.

2.4  Petitioner has established by a preponderance of the evidence that under the parties' custodial agreement she has guardianship and custody of SVM with their domicile in Mexico and that SVM will live with Respondent only during certain school vacations and summer vacation. Petitioner has, therefore, established by a preponderance of the evidence that Respondent's retention of SVM is in breach of Petitioner's custody rights under the custodial agreement.

2.5  Respondent does not dispute that Petitioner was exercising her custodial rights at the time of Respondent's retention of SVM.

2.6  Petitioner has established by a preponderance of the evidence her prima facie case that Respondent has wrongfully retained SVM. Respondent has the burden to establish an exception to the return requirement applies.

2.7  Article 13(a) of the Convention provides "the judicial . . . authority of the requested State is not bound to order the return of the child if the person . . . [who] opposes . . . return establishes that (a) the person . . . having the care of . . . the child . . . subsequently acquiesced in the removal or retention." Respondent must prove this exception by a preponderance of the evidence. 22 U.S.C. § 9003(e)(2)(B).

2.8  To establish the acquiescence exception "the Convention requires the parent opposing removal to unequivocally demonstrate that [the petitioning parent] consented to the child's indefinite stay in [America]." *Cuellar v. Joyce*, 596 F.3d 505, 512 (9th Cir. 2010) (quotation omitted). "Courts have further required that the defense of acquiescence requires 'an act or statement with the requisite formality, such as testimony in a judicial proceeding; a convincing written renunciation of rights; or a consistent attitude of acquiescence over a significant period of time.'" *Vonnahme v. Lugo*, No. 2:22CV

9 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

00707JADNJK, 2022 WL 3701578, at *6 (D. Nev. Aug. 26, 2022)(quoting *Baxter v. Baxter*, 423 F.3d 363, 372 (3d Cir. 2005)). The acquiescence inquir[y] focus[es] on the petitioner's subjective intent." *Id.*(quotation omitted).

2.9  Respondent fails to unequivocally demonstrate by a preponderance of the evidence that Petitioner consented to SVM's indefinite stay in Oregon. Respondent did not establish "an act or statement [by Petitioner] with the requisite formality, such as testimony in a judicial proceeding; a convincing written renunciation of rights; or a consistent attitude of acquiescence over a significant period of time" that indicates she acquiesced to SVM remaining in Oregon.

2.10 Petitioner repeatedly requested SVM's return to Mexico and did not formally act or make any statement that she consented to SVM remaining in Oregon. Respondent has not established that Petitioner renounced her rights or that she had an attitude of acquiescence over a significant period of time regarding SVM's presence in Oregon.

2.11 Article 13(b) of the Convention provides "the judicial . . . authority of the requested State is not bound to order the return of the child if the person . . . [who] opposes . . . return establishes that . . . (b) there is a grave risk that [the child's] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Respondent must prove this exception by clear and convincing evidence. 22 U.S.C. § 9003(e)(2)(A).

2.12 The grave risk exception applies only in "extreme" cases and is narrowly drawn. *Cueller*, 596 F.3d at 508-09. "'The exception for grave harm to the child is not license for a court in the abducted-to country to speculate on where the child would be happiest.'" *Delgado v. Marquez*, No. 23-CV-05141-VKD, 2024 WL 517874, at *10 (N.D. Cal. Feb. 9, 2024)

10 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

   (quoting *Gaudin v. Remis*, 415 F.3d 1028, 1035 (9th Cir. 2005), *abrogated on other grounds by Golan v. Saada*, 596 U.S. 666, 676 n.6 (2022)). "Rather, the question is whether the child would suffer serious abuse, that is a great deal more than minimal." *Gaudin*, 415 F.3d at 1035 (quotations omitted).

2.13 Respondent asserts there is a grave risk of harm to SVM if he returns to Mexico due to improper or insufficient medical care. A "parent may be able to defeat or delay return" under the grave risk of harm exception by showing by clear and convincing evidence that returning the child "would disrupt an ongoing course of medical treatment and severely impact the child's health." *Cuellar*, 596 F.3d at 511. The "parent would have to provide clear and convincing evidence both of the child's serious medical needs and of the home country's inability to provide the necessary care." *Id*.

2.14 Respondent has not established by clear and convincing evidence that returning SVM to Mexico would disrupt an ongoing course of medical treatment or severely impact SVM's health. Respondent also has not established that SVM is unable to receive appropriate and adequate medical and dental care in Mexico.

2.15 Respondent asserts there is a grave risk of harm to SVM if he returns to Mexico because the place to which SVM would return is controlled not by civilians or the government but by cartels who "operate by instilling fear in the population."

2.16 The parties do not cite a Ninth Circuit case directly on point, but courts outside the Ninth Circuit have addressed this exception under similar circumstances. *See, e.g., Vazquez v. Estrada*, No. 3:10-CV-2519-BF, 2011 WL 196164, at *5 (N.D. Tex. Jan. 19, 2011) (evidence that the community where the petitioner lived was dangerous due to a surge in cartel activity was not sufficient to establish that it is "zone of war"); *Silverman v.*

11 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

*Silverman*, 338 F.3d 886, 901 (8th Cir. 2003)(general regional violence in Israel does not establish a "zone of war"); *Mendez Lynch v. Mendez Lynch*, 220 F. Supp. 2d 1347, 1365–66 (civil instability and presence of violent demonstrations in Argentina does not amount to a "grave risk" or "intolerable situation"); *Bernal v. Gonzalez*, 923 F. Supp. 2d 907, 921 (W.D. Tex. 2012)(evidence that ongoing cartel violence in Mexico posed serious risk to children insufficient to amount to "grave risk" or show that petitioner's community was "zone of war, famine, or disease"); *Hazbun Escaf v. Rodriquez*, 200 F. Supp .2d 603 (E.D. Va. 2002)(holding there was no clear and convincing evidence of serious danger to a 13–year–old Colombian national who also held US citizenship when he had lived in Colombia without incident for over a year and had friends and family there, even though kidnapping of US citizens had increased and his father had been specifically threatened).

2.17   In *Mendoza v. Esquivel*, the court addressed a similar argument relating to the same area of Mexico that SVM would return to noting:

> Respondent likewise fails to meet her burden in proving that Michoacán, Mexico is a zone of war, famine, or disease. The discrete examples of violence to which Respondent testified - while disturbing - are insufficient to prove that the country of Mexico or the state of Michoacán pose a grave risk of harm to the Children upon their return. Respondent did not, for example, provide any evidence comparing the crime rates in Michoacán to those in Columbus, Ohio, or explain why the Children face a greater risk of violence in Mexico than they face in the United States. The fact that the United States has issued a travel warning to citizens traveling to Michoacán, Mexico is insufficient to establish that Michoacán, Mexico is a war zone. And Respondent's counsel's statements during closing argument that it is "well-documented" in the media that cartel violence in Mexico has turned the country into a war zone is not clear and convincing evidence of the same.

No. 2:16-CV-0001, 2016 WL 1436289, at *11 (S.D. Ohio Apr. 12, 2016).

2.18   Respondent presented photographs taken from news articles involving violence in the state of Michoacán, but there was no evidence that the photographs were taken near

12 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

where Petitioner lives or that the area where Petitioner lives experiences regular cartel violence. Respondent testified that he has not been out of the United States since 1998 and he has no direct personal knowledge of what life is like in Michoacán. Petitioner testified that no one in her family, SVM, or herself have ever been threatened with violence and the area in which she lives in safe. Respondent has not established by clear and convincing evidence that there is a grave risk to SVM if he returns to Mexico.

## CONCLUSION

At the conclusion of trial the Court granted Petitioner's Verified Petition for Return of Child to Habitual Residence and directed Respondent to return SVM to Petitioner's care in Mexico no later than July 31, 2024. Petitioner's counsel was directed to file a Notice informing the Court within 48 hours of SVM's successful return to Mexico.

The Hague Convention requires the Court to "order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, . . . and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3). Accordingly, Petitioner may move for appropriate attorney fees and costs within 14 days of entry of this Findings of Fact and Conclusions of Law. The response is due 14 days after Petitioner's Motion.

Respondent is directed to file a response to Petitioner's Supplemental Motion in Limine, ECF 35, no later than 14 days after entry of this Findings of Fact and Conclusions of Law.

IT IS SO ORDERED.

DATED:＿＿July 29, 2024＿＿＿＿．

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
MARCO A. HERNÁNDEZ
United States District Judge