IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LILIANA JACQUELINE MONDRAGON
MARTINEZ,

                  Petitioner,

v.

OSCAR AURELIO VEGA CONTRERAS,

                  Respondent.

No. 3:24-cv-00694-HZ

OPINION & ORDER

Katelyn D. Skinner
Katrina Anne Seipel
Buckley Law, P.C.
5300 Meadows Road
Suite 200
Lake Oswego, OR 97035-8617

        Attorneys for Petitioner

Kimberly S. Brown
9320 S.W. Barbur Blvd.
Suite 160
Portland, OR 97219

        Attorney for Respondent

HERNÁNDEZ, Senior Judge:

This matter comes before the Court on Petitioner's Motion for Sanctions, ECF 35, and Petitioner's Motion for Attorney Fees and Costs, ECF 48. For the reasons that follow, the Court denies Petitioner's Motion for Sanctions. The Court grants Petitioner's Motion for Attorney Fees and Costs and awards Petitioner attorney fees in the amount of $90,444.00 and costs in the amount of $12,257.65.

## BACKGROUND

On April 23, 2024, Petitioner Liliana Jacqueline Mondragon Martinez filed a Verified Petition for Return of Child to Habitual Residence in which she sought the return of her minor child, SVM, to Mexico pursuant to the Hague Convention on the Civil Aspects of Child Abduction and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001-9011. Respondent Oscar Aurelio Vega Contreras opposed the Petition.

On July 12, 2024, Petitioner filed a Motion for Sanctions in which she requested attorney fees for time that Petitioner's counsel incurred related to discovery issues.

On July 24, 2024, through July 26, 2024, the Court conducted a three-day bench trial. At the conclusion of trial the Court granted the Petition for Return of Child and ordered the return of SVM to Mexico.

On July 29, 2024, the Court issued Findings of Fact and Conclusions of Law, granted Petitioner leave to file a motion for attorney fees, and directed Respondent to file a response to Petitioner's Motion for Sanctions.

On August 12, 2024, Petitioner filed a Motion for Attorney Fees and Costs in which she seeks fees in the amount of $192,175.00 and costs in amount of $12,257.65.

On September 4, 2024, the Court held a hearing on Petitioner's Motion for Sanctions. On September 16, 2024, Petitioner filed a Supplement to the Motion for Sanctions seeking attorney fees in the amount of $8,380.50 to be awarded against Respondent's counsel. The Court took the Motions under advisement on September 16, 2024.

## MOTION FOR SANCTIONS

### I.    Background

Petitioner alleges that before trial Respondent's counsel, Kimberly Brown, told Petitioner's counsel, Katrina Seipel, that subpoenas to Eastwood Elementary School, Virginia Garcia Memorial Health, and Acorn Dentistry for Kids had been prepared and sent on June 26, 2024. On July 2, 2024, Seipel emailed Brown and asked her to provide Seipel with copies of those subpoenas. On July 5, 2024, Brown advised that she would send them to Seipel that day. On July 9, 2024, Brown's paralegal, Lisa Parsons, informed Seipel that the subpoenas had not yet been sent to those entities. On July 10, 2024, Parsons emailed Seipel electronic copies of the subpoenas.

Petitioner asserts that Parsons indicated in an email that Respondent's exhibits 519, 520, and 521 are documents that Brown's office received in response to the subpoenas, but exhibits 520 and 521 are the same documents that were attached to the Response to the Petition filed on May 30, 2024, well before any subpoenas were issued. Moreover, Seipel's paralegal, Lucas Dudley, "reached out to the subpoenaed entities to inquire about the subpoenas and any records produced in response." Pet. Mot., ECF 35, at 6. Dudley spoke with the records department at Virginia Garcia Memorial Health and was told "that they had never received a subpoena, nor had they ever produced any records pertaining to SVM in response to any such subpoena." *Id.*

In the Motion for Sanctions Petitioner requests "monetary sanctions in the form of [Seipel's] attorney's fees" be imposed on Brown pursuant to 28 U.S.C. § 1927 to account for the time Seipel spent "assessing and strategizing how to proceed" in light of the issues noted above. Brown asserts in the Response to the Motion for Sanctions that she did not misrepresent that the subpoenas had been prepared and mailed to the entities. Brown states the subpoenas were mailed on June 27, 2024, but she did not receive any documents. On July 5, 2024, Brown asked Respondent to gather the records that he had in his possession and produced those records. Brown went on vacation at some point before trial and asked Parsons to send the subpoenas again "to show that no documents that may not have been included in the discovery from the original documents caused any harm [Petitioner's] case." Resp., ECF 51, ¶ 2. No response was received to the second set of subpoenas. Brown asserts that Parsons mistakenly told Seipel that the subpoenas had not been sent. Brown states she had informed Parsons that Brown had not sent the copies of the subpoenas to Seipel before Brown left on vacation, but Parsons misunderstood and believed Brown had not sent the subpoenas to the entities. Finally, Brown acknowledged that many of Respondent's documents were "late and untimely filed," *id.* ¶ 7, but this was Brown's first Hague Convention case, she had "a steep learning curve," and she did not intend to mislead or misrepresent. *Id.*

The Court held a hearing on Petitioner's Motion for Sanctions on September 4, 2024. At the hearing Petitioner reasserted her arguments. Brown reiterated that her paralegal's communications about the subpoenas were not misrepresentations, but rather the result of miscommunication between Brown and her staff. Brown also reiterated that when she did not receive any responses to her subpoenas she asked Respondent to collect any records he had from

the subpoenaed sources and Brown sent those to Petitioner in an effort to comply with discovery requests in some capacity even though Brown had not received responses to the subpoenas.

## II.    Analysis

Under 28 U.S.C. § 1927, any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). "For sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass. Thus, while it is true that reckless filings may be sanctioned, and nonfrivolous filings may also be sanctioned, reckless nonfrivolous filings, without more, may not be sanctioned." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996).

Brown's litigation of this matter was disorganized and many of her responses to discovery and Court deadlines were late. The Court, however, does not find on this record that Brown acted in bad faith. The Court also finds Brown's filings were not frivolous or intended to harass. The Court, therefore, denies Petitioner's Motion for Sanctions.

### MOTION FOR ATTORNEY FEES AND COSTS

Petitioner seeks attorney fees of $96,087.50 for 294.4 hours of work performed by two attorneys, four paralegals, a legal assistant, and a project assistant. Petitioner also seeks a 2.0 multiplier. Petitioner requests costs in the amount of $12,257.65.

## I.    Entitlement to Fees

Federal Rule of Civil Procedure 54(d)(2)(A) provides a "claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." "The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed." *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000)(citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Fee petitions that lack sufficient supporting materials to permit the court to determine the reasonableness of the hourly rates claimed or of the tasks performed may be totally or partially denied. *See Lyon v. Chase Bank USA, NA*., 656 F.3d 877, 892 (9th Cir. 2011).

"Rule 54(d)(2) creates a procedure but not a right to recover attorneys' fees . . . there must be another source of authority for" an award of attorney fees. *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1280–81 (9th Cir. 1999)(quotation omitted). ICARA, which implements the United States' obligations under the Hague Convention, provides

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs [and] legal fees . . . unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3).[1] Thus, "[t]here is a presumption in favor of an award for fees and other expenses 'unless the respondent establishes that such order would be clearly inappropriate.'" *Harvey v. Means*, No. 2:23-CV-1712, 2024 WL 4144155, at *2 (W.D. Wash. Sept. 11, 2024) (citing *Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir. 2010)(quoting 22 U.S.C. § 9007(b)(3)).

---

[1] Article 26 of the Hague Convention provides: "Upon ordering the return of a child . . . under this Convention, the judicial . . . authorit[y] may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay . . . the costs of legal representation of the applicant[.]"

Respondent did not file a response to Petitioner's Motion for Attorney Fees and did not present any argument establishing that Petitioner is not clearly entitled to fees. As with "any custody dispute, this was an emotionally challenging situation, but from a merits standpoint, this was not a difficult case." *Harvey*, 2024 WL 4144155, at *2 (citing *Cuellar*, 603 F.3d at 1143). Respondent conceded two of the four prima facie elements establishing that he unlawfully retained the child and failed to establish any affirmative defense. *See Cuellar*, 603 F.3d at 1143 (finding an award of fees and costs is appropriate when the case is not "difficult" and "falls squarely within the heartland of the Hague Convention.").

In addition, some courts have found that "'a fee award may be inappropriate when it prevents the respondent-parent from caring for the child.'" *Harvey*, 2024 WL 4144155, at *2 (quoting *Rehder v. Rehder*, No. C14-1242RAJ, 2015 WL 4624030, at *3 (W.D. Wash. Aug. 3, 2015)). Respondent, however, makes no showing that a fee award would interfere with his ability to care for his child.

The Court concludes Respondent has not established that a fee award would be clearly inappropriate.

## II.    Lodestar Standard

Having determined that Petitioner is entitled to recover fees, the Court must determine whether the fees requested are reasonable. *Harvey*, 2024 WL 4144155, at *3 (citing *Sullivan v. Sullivan*, No. CV-09-545-S-BLW, 2010 WL 1651994, at *1 (D. Idaho Apr. 21, 2010)(citing *Hensley*, 461 U.S. at 433). "A reasonable attorney fee is determined by calculating the 'lodestar.'" *Id.* (quoting *Hensley*, 461 U.S. at 433)(determining reasonableness of fee petition following successful petition for return of child under ICARA by applying lodestar method)).

Under the lodestar analysis the court calculates the "lodestar" by "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). A "prevailing plaintiff must . . . submit evidence supporting the award." *Machowski v. 333 N. Placentia Prop., LLC*, 38 F.4th 837, 841 (9th Cir. 2022)(citing *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105 (9th Cir. 2015)(a fee "applicant has an initial burden of production, under which it must produce satisfactory evidence establishing the reasonableness of the requested fee," including "proof of market rates in the relevant community . . . and detailed documentation of the hours worked").

After calculating the lodestar, the court "may adjust the lodestar upward or downward using a multiplier based on factors not subsumed in the initial calculation of the lodestar."[2] *Day v. AT & T Disability Income Plan*, 608 F. App'x 454, 457 (9th Cir. 2015)(quotation omitted). "assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of . . . factors that are not already subsumed in the initial lodestar calculation." A "strong presumption" exists, however, that the lodestar figure represents a "reasonable fee," and therefore, it should only be enhanced or reduced in "rare and exceptional cases." *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). While it is not necessary to detail every numerical calculation, the court must provide "enough of an explanation to allow for meaningful review of the fee award." *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001).

---

[2] Factors subsumed within the lodestar include the novelty and complexity of the issues, special skill and experience of counsel, quality of the representation, results obtained, and the superior performance of counsel. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997)(citation omitted).

### III.    Analysis

Respondent did not file an objection to Petitioner's requested attorney fees. The Court, however, has "an independent duty to review the fee petition for reasonableness."[3] *Sarkisian v. Newmar Indus., Inc*., No. 3:21-CV-01123-IM, 2023 WL 7911763, at *4 (D. Or. Nov. 16, 2023).

### A.    Reasonable Rate

When deciding the reasonable hourly rate, the court determines what a lawyer of comparable skill, experience, and reputation could command in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 979 (9th Cir. 2008). "'[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Eberly-Sherman v. Dep't of Army/NAF*, 471 F. App'x 629, 630 (9th Cir. 2012)(quoting *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th Cir. 2009)). Judges in the District of Oregon use the Oregon State Bar Economic Survey ("OSB Economic Survey") as a benchmark for assessing the reasonableness of hourly billing rates. *See Bala v. Oregon Health & Sci. Univ*., No. 3:18-CV-00850-HZ, 2024 WL 3785975, at *6 (D. Or. Aug. 12, 2024)(citing *Anderson v. Ross Island Sand & Gravel Co*., No. 3:18-CV-00898-SB, 2018 WL 5993581, at *3 (D. Or. Oct. 24, 2018), *findings and recommendation adopted*, No. 3:18-CV-00898-SB, 2018 WL 5585671 (D. Or. Nov. 12, 2018); LR 54-3(a)). The most recent OSB Economic Survey was published in 2022.[4] Courts may also consider "the novelty and difficulty

---

[3] See Exhibit 1 for the Court's calculation of Petitioner's attorney fees.
[4] The OSB Economic Survey is available at https://www.osbar.org/_docs/resources/Econsurveys/ 22EconomicSurvey.pdf

of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008).

### 1.    Attorney Katelyn Skinner

Petitioner seeks attorney fees for Skinner at a rate of $450 per hour. Skinner has been a member of the Oregon State Bar for 14 years. Skinner is an equity shareholder at Buckley Law, P.C., and one of a select few attorneys in Oregon who handle Hague Convention cases. Skinner's fee request is supported by Katrina Seipel's Declaration. According to the 2022 OSB Economic Survey, the median hourly rate for Portland attorneys with 14 years of experience is $400 and 95th percentile hourly rate is $733. The Court finds Skinner's requested rate is reasonable.

### 2.    Attorney Katrina Seipel

Petitioner seeks attorney fees for Seipel at a rate of $365 per hour. Seipel has been a member of the Oregon State Bar for eight years. Seipel is an associate at Buckley Law, P.C.; was a public defender at Metropolitan Public Defender, Inc., prior to 2022, where she tried approximately 80 misdemeanor, minor felony, and major felony jury trials; and since 2022 has practiced solely state and international family law and Hague Convention matters. Seipel is one of a select few attorneys in Oregon who handle Hague Convention cases. According to the 2022 OSB Economic Survey, the median hourly rate for Portland attorneys with eight years of experience is $350 and 95th percentile hourly rate is $486. The Court finds Seipel's requested rate is reasonable.

### 3. Paralegals

Petitioner requests fees for four paralegals at rates between $185 and $260 per hour. Petitioner does not provide information regarding the paralegals' experience, degrees, or certificates nor does Petitioner cite any report supporting the proposed rates.

The Court relies on the 2022 National Utilization and Compensation Survey Report published by NALA: The Paralegal Association to determine the reasonable hourly billable rate for paralegals. The NALA Survey Report reflects the average hourly billing rate in 2022 was $122 for paralegals in the Far West Region (which includes Oregon) and $136 for paralegals in firms of more than 46 employees. The Report also states, however, that 21 percent of all paralegals bill between $151 and $200 per hour. The Court, therefore, concludes an hourly rate of $185 is reasonable for paralegals on this matter.

### 4. Legal Assistant

Petitioner requests fees for legal assistant Anthony Johnson at the rate of $150 per hour. Petitioner does not provide information regarding Johnson's experience, degrees, or certificates nor does Petitioner cite any report supporting that rate.

Courts in this district are divided whether to award fees for work performed by legal assistants. *Compare Aichele v. Blue Elephant Holdings, LLC*, 3:16-cv-02204-BR, 2018 WL 2357533, at *5 (D. Or. May 24, 2018)("The Court has not found any report that reflects hourly billing for legal assistants (as opposed to paralegals)" and declining to award any fees for legal assistant work) *with Kulpala v. Delgoda*, 3:15-cv-01890-BR, 2016 WL 1618285, at *1 (D. Or. April 21, 2016)(noting that "attorneys' fee awards permitted by statute frequently compensate for work performed by law clerks and legal assistants") and *Poticny v. Movers & Packers Relocation Specialists LLC*, No. 3:22-CV-01243-IM, 2022 WL 18024218, at *9 (D. Or.

Dec. 30, 2022)(awarding fees for legal assistant). When courts in this district have awarded fees

for work done by legal assistants, they have awarded those fees at rates well below the $150

requested here. *See, e.g., Poticny*, 2022 WL 18024218, at *9 (awarding $90 per hour for work

done by legal assistants); *Wilson v. Decibels of Oregon, Inc.*, Nos. 1:17-cv-01558-MC, 1:17-cv-

01624-MC, 2019 WL 6245423, at *4 (D. Or. Nov. 22, 2019)(awarding $90 per hour for work

done by legal assistants); *Oregon Laborers-Employers Health & Welfare Tr. Fund v. Baseline

Indus. Constr. Inc.*, No. 3:19-cv-1343-IM, 2019 WL 6329336, at *4 (D. Or. Nov. 26, 2019)

(awarding $90 per hour for work done by legal assistants). The Court concludes an hourly rate of

$90 is reasonable for Johnson.

### 5. Project Assistant

Petitioner requests fees for project assistant Erika Reyes Garcia at the rate

of $115 per hour. Petitioner does not provide information regarding Garcia's experience,

degrees, or certificates nor does Petitioner cite any report supporting that rate. This Court has

awarded fees for a project assistant on one occasion a rate of $25. *See Ash Grove Cement Co. v.

Liberty Mut. Ins. Co.*, No. 3:09-CV-00239-HZ, 2014 WL 837389, at *13 (D. Or. Mar. 3, 2014),

aff'd, 649 F. App'x 585 (9th Cir. 2016)("Because Clarke has little work experience and no

specialized education, I find that $25 is a reasonable hourly rate for a project assistant."].

Although this Court awarded that amount more than 10 years ago, as noted, Petitioner provides

no information about Garcia's experience or qualifications. The Court concludes in light of the

lack of information that a rate of $50 per hour is appropriate.

### B. Hours Reasonably Expended

It is the fee claimant's burden to demonstrate that the number of hours spent on

the case was "reasonably necessary" to the litigation and that counsel made "a good faith effort

to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]"
*Hensley*, 461 U.S. at 434. *See also Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 886 F.2d
1545, 1557 (9th Cir. 1989)("Plaintiffs bear the burden of showing the time spent and that it was
reasonably necessary to the successful prosecution of their [ ] claims.").

### 1.    Attorney Hours

Petitioner seeks compensation for 23.8 hours of work performed by
Skinner and 184.6 hours of work performed by Seipel. Discovery in this matter was complicated
by the fact that many witnesses and documents were in Mexico as well as by Respondent's
various problems with production. In addition, the matter went to trial on an extremely
condensed schedule to comply with the Hague Convention. The Court concludes that the number
of hours spent by Skinner and Seipel are reasonable.

### 2.    Paralegal and Legal Assistant Hours

Petitioner seeks compensation for 50 hours of work performed by
paralegals and 34.5 hours of work performed by Johnson. This time involves document
preparation, compilation, and review; revising and editing documents; and appropriate client
communications, among other things. The Court concludes that the number of hours spent by
paralegals and the legal assistant are reasonable.

### 3.    Project Assistant Hours

Petitioner seeks compensation for 1.5 hours of work performed by Garcia
consisting of .5 hours "confer[ring] with Legal Assistant Johnson re: research for client's address
in Mexico" and one hour of "[t]ranslation for Attorney Seipel." Seipel Decl., ECF 50, Ex. 1 at 5,
8. Petitioner does not provide information regarding what was translated by Garcia or why
translation was necessary. In addition, Johnson billed 1.5 hours to "[t]rack down proper Mexican

address for [Petitioner]." *Id*. at 5. It is unclear why Johnson and Garcia were required to bill 2.5 hours to determine their own client's address. The Court, therefore, concludes Petitioner has not established Garcia's time is reasonable and declines to award the requested hours.

**C.    Multiplier**

Petitioner asks the Court to apply a 2.0 fee multiplier. Petitioner asserts the multiplier is warranted due to "unreasonable conduct" of Respondent and his counsel throughout this litigation. Pet. Memo., ECF 49, at 4. Petitioner notes Respondent failed to comply with several deadlines, failed to timely produce discovery, and did not mount any reasonable defenses.

A court "may 'adjust the lodestar upward or downward by using a multiplier,' but only the 'rare' or 'exceptional' case justifies an upward adjustment." *Meeks v. FCA US LLC*, No. 1:22-CV-0761 JLT CDB, 2024 WL 4437098, at *8 (E.D. Cal. Oct. 7, 2024)(quoting *Van Gerwen*, 214 F.3d at 1045). When evaluating a request to adjust the lodestar, the court may consider: "'(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award.'" *Id.* (quoting *Rahman v. FCA US LLC*, 594 F. Supp. 3d 1199, 1207 (C.D. Cal. 2022)). A multiplier must be "supported both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen*, 214 F.3d at 1045 (internal quotation marks, citations omitted.)

The Court finds that a fee multiplier is not appropriate. The Court recognizes the interests at stake here were serious and acknowledges counsel's skill in presenting the questions involved, but the issues on which Petitioner prevailed were not particularly novel or difficult.

The Court also recognizes the fact that Respondent often did not timely provide discovery or comply with Court deadlines. The Court finds, however, that the difficulties Petitioner experienced that were caused by this behavior are subsumed in the reasonable number of hours expended by Petitioner's counsel. The Court, therefore, declines to award a fee multiplier.

## IV.    Costs

Petitioner seeks costs of $12,257.65 comprised of costs for the filing fee, process servers, mileage, copying, translation of documents, interpretation services, and transcripts.

### A.    Standards

Federal Rule of Civil Procedure 54(d)(1) provides: "Unless a federal statute, these rules, or a court order provides otherwise, costs - other than attorney's fees - should be allowed to the prevailing party." This rule creates a presumption in favor of awarding costs to a prevailing party and "the losing party must show why costs should not be awarded." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944–45 (9th Cir. 2003).

28 U.S.C. § 1920 allows a federal court to tax specific items as costs against a losing party pursuant to Federal Rule of Civil Procedure 54(d)(1). Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;

(6) Compensation for court-appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under § 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

The court must limit an award of costs to those defined in 28 U.S.C. § 1920 unless otherwise provided for by statute. *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 877 (2019). The district court has discretion to refuse to award costs, but it must provide specific reasons for doing so. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247 (9th Cir. 2014) (citing *Ass'n of Mexican-Am. Educators v. State of Cal.*, 231 F.3d 572, 593 (9th Cir. 2000)).

**B.    Analysis**

Respondent did not respond to Petitioner's request for costs, Petitioner's requested costs are properly taxable under § 1920, and her costs are reasonable and supported. The Court, therefore, awards Petitioner costs in the amount of $12,257.65.

## CONCLUSION

The Court DENIES Petitioner's Motion for Sanctions, ECF 35. The Court GRANTS Petitioner's Motion for Attorney Fees and Costs, ECF 48, and awards Petitioner attorney fees in the amount of $90,444.00 and costs in the amount of $12,257.65.

IT IS SO ORDERED.

DATED:_____October 17, 2024_____.

MARCO A. HERNÁNDEZ
United States Senior District Judge

**Mondragon Martinez v. Contreras**
**3:24-cv-00694-HZ**

**Attorney Fees**

| Individual | rate requested | rate allowed | hours requested | hours allowed | total |
|---|---|---|---|---|---|
| | | | | | |
| Katelyn Skinner | 450 | 450 | 23.8 | 23.8 | $ 10,710.00 |
| Katrina Seipel | 365 | 365 | 184.6 | 184.6 | $ 67,379.00 |
| Wendy Goodyear | 260 | 185 | 44 | 44 | $ 8,140.00 |
| Quinn Allen | 225 | 185 | 2 | 2 | $ 370.00 |
| Rachel Perez | 215 | 185 | 0.7 | 0.7 | $ 129.50 |
| Lucan Dudley | 185 | 185 | 3.3 | 3.3 | $ 610.50 |
| Anthony Johnson | 150 | 90 | 34.5 | 34.5 | $ 3,105.00 |
| Erika Reyes Garcia | 115 | 50 | 1.5 | 0 | $ - |

| | total | $ | 90,444.00 |
|---|---|---|---|

**Exhibit 1**